[No. 1462.]
## Walpole v. The City of Pueblo.

1. Pleading.
In an action against a city by a county assessor for compensation claimed under section 3353, General Statutes, for services performed in listing and assessing the property of the city for municipal taxation, a complaint that fails to allege that plaintiff disclosed to the city council the nature and extent of his services at the time he presented his claim is insufficient to state a cause of action.

2. Fees and Salaries—Compensation of Assessors.
The act of 1891 fixing the salaries of county assessors of counties of the first and second class provides the only compensation to which such assessors are entitled, and repeals so much of section 3353, General Statutes, 1883, as required cities and towns, in such counties, to allow the county assessors compensation for their work in relation to the assessment of property for municipal taxation.

*Error to the District Court of Pueblo County.*

Messrs. Pattison, Waldron & Devine, for plaintiff in error.

Mr. S. Harrison White, for defendant in error.

Bissell, J.

N. S. Walpole was the county assessor of Pueblo county, which is a county of the second class under the statute. From January, 1893, to January, 1894, he officially designated on the records of his office the taxable property within the corporate limits of the city of Pueblo in that county. He

exhibited thereon the valuations which he had fixed and did as assessor what was required to facilitate the collection of the municipal taxes. Prior to the year 1891 the county assessor received a compensation dependent on the discretion and determination of the county commissioners of the county and of the common council of the city. Under the prior acts he was allowed a sum not exceeding $7.00 per day for the time actually employed, though his salary was not fixed at that definite sum, but was determinable by the board of county commissioners. For the labor which the statute imposed on him to prepare his records so that the city government might collect its taxes, he was entitled to such reasonable compensation as the common council might allow him. Under the original scheme prescribed by the revenue act of the state and the act concerning towns and cities much of the labor with reference to the collection of taxes was imposed on three of the county officers, the county treasurer, county clerk and recorder, and the assessor. The later acts have modified these duties in some respect and have imposed part of the labor formerly laid on the county clerk on the county assessor. The act of 1891 changed the mode and method of compensating the assessor. Walpole contending that the act relating to towns and cities which provided that the common council should allow him such compensation as in their judgment was right and proper for doing the work necessary to the collection of the municipal taxes was still in force and applicable, brought this suit. He filed a complaint which alleged that he was engaged in the lawful discharge of his duties as assessor for the year specified, and that *ex officio* as provided by law, he did what the statute prescribed, and that his services were performed during extra hours and outside of the time required by law to perform his duties in the interest and for the county proper; that he hired a large number of clerks for whose services he paid, and that the reasonable value of the services and work done was $1,950. He presented this claim on the 5th of March, 1894, to the city for allowance, demanded payment of it, which was refused, and

alleged that no part of it had been paid, and that the council wholly refused to pay the claim or any part of it. He set up a second cause of action covering the extension of the taxes on the books and the computation of the amount due the city from property owners within the corporate limits, and then pursuing the same general line of allegation, averred the value to be $200, the presentation of the bill, and a refusal to pay. The complaint was demurred to, the demurrer sustained, and he prosecutes error to reverse the judgment.

It is quite possible the case might be disposed of on a technical ground that the complaint failed to state a cause of action even on the statute under which he claims compensation. By the terms of the act concerning towns and cities, being section 3353 of the General Statutes of 1883, the council or board of trustees are undoubtedly thereby constituted a *quasi*-judicial body, to which is intrusted, and on which is imposed the duty to determine the allowance which the assessor shall receive for doing the work prescribed by the revenue act, and which is, and was essential to facilitate the collection of city taxes and enable the municipality to determine the property which was liable to taxation and the amounts collectible by the city. Since this is true, it is quite difficult to see how the plaintiff stated a cause of action in his complaint. He alleged that *ex officio* he performed this duty for the city. This is in no sense accurate because he was not the representative of the city at all, but performed the work prescribed by the revenue act and laid on him as a duty by the General Statutes prescribing the duties of assessors. While the labor inured to the benefit of the city, it was done as county assessor and not otherwise, and the assessor in no manner occupied a dual position, or held two offices, or any office within the gift of the municipality or controllable by it, nor was he entitled to any compensation as the holder of a city office. The legislature evidently intended to provide that his compensation should come partly from the city and partly from the county, leaving it to the municipal authorities to determine the value of the work which the assessor

performed for its benefit. Under these conditions, it must be true, that to entitle the assessor to a judicial review of the action of the city council, he must present to the city a claim for the services which he has performed, and must therein and thereby exhibit its character and extent; set up what was done, and leave it to the council to determine what, if any, allowance should be made. The complaint does not state that he did otherwise than present the bill which the council refused to pay. He nowhere alleges that he offered proof of his services, or that he furnished the council the data whereon and whereby they could investigate and judicially determine the extent or the value of his services. Simply presenting a claim for $1,950 in no manner exhibited the performance of a duty nor the extent of that performance which was essential to advise the council and furnish them a basis on which they could judicially act. It might, therefore, easily and readily be that the council could refuse to allow the claim as presented and yet be entirely willing to investigate the character of the services rendered and determine whether the officer was entitled to an allowance, and if so, how much. We are quite of the opinion the complaint was technically insufficient, and while, probably, it is the subject of amendment, and if it was wholly inaccurate the plaintiff might have the right to take steps under the statute to initiate and perfect his rights, if any, yet, we believe it to be absolutely essential to exhibit these facts and his action in the complaint, and show that he had done everything that he ought to have done to enable the council or board of trustees to act intelligently before he can commence a suit and obtain a judicial determination of the question whether the council made him a reasonable allowance, or was right in refusing to make him any. While the complaint is in our judgment radically defective in these particulars, it would be manifestly unfair to the plaintiff as well as to the city to base the judgment wholly on that ground. Such a decision would leave the question between the city and the assessor still open, and it would yet remain to be determined in case he took the

proper steps whether in any event the city could be made liable and compelled to pay the assessor for the work which he had done. The case was evidently argued below and tried on that hypothesis, it has been presented on writ of error on this basis, and counsel argue the precise question whether, as the statute now stands, the assessor is entitled to any compensation from the city and can receive any pay other than that prescribed by the act of 1891. The question has given us much difficulty. The statutes both stand, and the only repealing clause in the act of 1891 is the general provision contained in most acts repealing all acts and parts of acts inconsistent with it. This may be either a direct repeal, or repeal by implication as the case may be, but the plaintiff in error insists that it is neither. A somewhat analogous question has already been before the court and has received consideration. *Henderson v. Pueblo County*, 4 Colo. App. 301; *Larimer County v. Bransom*, 4 Colo. App. 274.

In those two cases the court, speaking by the present president judge decided that the act of 1891 prescribed the compensation of the sheriff and the county clerk; that it provided a salary for both of these officers, and that the salary prescribed was a total compensation and that it was payable out of the fund made up by the fees collected by those officers under the provisions of the salary act of 1891. According to that act nearly all of the feed officers of the state remain feed officers, in that they are entitled and required to charge certain specific fees for definite services which cover all the official duties of the officers named in the act. These fees are paid into the county treasury, designated as a fee fund, and out of the fees collected the officers receive the compensation provided. It was held in the *Henderson* case that the county clerk, upon whom the statute laid certain duties, and of whom it required certain services, was required to do whatever the statute specified, whether it be the filing of instruments or rendering services as clerk to the board of county commissioners, and that although the act laid on him both duties, he was entitled to one compensation, to wit,

the salary. Speaking generally, he held only one office for which there was one compensation. So far as concerned his duties as clerk of the board, they were duties required of him as county clerk, and as such he was compelled to discharge them and entitled to no other compensation than the specified salary. The office of county assessor is somewhat different. It is not a feed office and the officer gets no compensation except a definite one provided by the act. The various counties in the state are divided into several classes, but our opinion only extends to the first two classes specified in section 13 of the act. The compensation of county assessors in counties of the first class is $4,000; in the second class, an annual salary of $3,000. This sum or salary is not payable out of any fees received by the officer, but is payable out of the general funds of the county treasury. This was the only feasible plan because so far as the public is advised, the assessor receives no compensation for the performance of his duties other than that provided by the act and there are no fees out of which it can be paid. In counties of the other classes, they still receive an indefinite amount to be determined by the board of county commissioners, and possibly, though respecting this we express no further opinion, a further allowance by such municipalities as may be within their jurisdiction under the provisions of the cities and towns' act. As to them it may possibly be still in force. This is thrown out simply by way of suggestion to furnish a reason why there was no direct repeal of the cities and towns' act. The original legislation respecting the compensation of county assessors in counties other than those of the first and second classes was apparently unchanged. We are decidedly of the opinion, however, that the act of 1891 determines definitely and specifically the salary of assessors in counties of the first and second class. They are given a prescribed sum for their compensation. It is not left to the determination of the county commissioners, the common councils, or the boards of trustees from which bodies all power in the matter is taken away. The act prescribes that the assessors shall receive a

definite, fixed sum, payable out of the county treasury for doing those things which the various enactments prescribe. In counties of the first class it is $4,000, and in those of the second class, it is $3,000. It was the evident intention of the legislature to determine what sum was and would be an adequate compensation to those officers for the performance of all the duties laid on them by the various acts governing the collection of revenue; whether the revenues of the county, or the revenues of municipalities within the county limits. The salary is definite, fixed and certain, and must be taken as the measure of compensation. The argument *ab inconvenienti* is to our minds a complete answer to the opposing contention. Take the present case as an illustration. Under the act of 1891, Walpole was entitled to $3,000 a year for performing all of his statutory duties; if we hold that section 3353, *supra*, is still in force and applicable, and that under it he has a claim and that his claim is just, and that what he has sued for is a reasonable compensation, the result is he gets $3,000 a year salary out of the county; he then files a petition and the council allows it, or he succeeds in proving in a court that the claim as presented is a reasonable compensation, and he recovers $1,950. He thereby obtains as a compensation and as salary $4,950, when the statute prescribes that his annual salary and total compensation shall be $3,000. A still stronger illustration might probably be found in the county of Arapahoe, which is the only county of the first class in the state. The assessor of Arapahoe county could recover a much larger sum than $1,950, and his compensation in place of being $4,000 per annum, would probably be twice that of either the chief executive of the state or any judicial officer in it. Even a layman can appreciate that such a salary would be largely more than the occupant of that office in Arapahoe or any other county would be entitled to receive for the class of services which he performs, the labor imposed, or the responsibility assumed.

We are, therefore, constrained to hold that the act of 1891 prescribes the salary of the assessor, and that this salary is

the total compensation which he is entitled to receive for the performance of his duties.

The judgment sustaining the demurrer is right, and will accordingly be affirmed.

*Affirmed.*